UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HELMUT ZARWASCH-WEISS, | CASE NO. 1:10-cv-1327 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE<br>NANCY A. VECCHIARELLI |
| SKF ECONOMOS USA, INC. *et al*, | |
| Defendant. | |
| SKF USA INC, | CASE NO. 1:10-cv-1548 |
| Plaintiff, | MAGISTRATE JUDGE<br>NANCY A. VECCHIARELLI |
| v. | |
| HELMUT ZARWASCH-WEISS, *et al.*, | **FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW<br>AND ORDER** |
| Defendants. | |

These cases are before the magistrate judge on consent. On September 19 and 20, 2011, the court conducted a trial on the issue of damages in Case No. 1:10-cv-1548. Based upon evidence introduced at trial and upon the court's previous findings of fact, the court reaches the findings of fact and conclusions of law described below.

I. Findings of Fact

Zarwasch was General Manager of Economos Philippines Co., Ltd. from 1999-

2003, Regional Sales Manager for Economos for South East Asia for Economos Austria from 1999 to 2003, and General Manager of Economos Thailand Co. Ltd. from 2001-03. In 2003, he came to the United States and became President of Economos USA ("SKF Economos").[1]  On January 1, 2006, Zarwasch and SKF Economos entered into a Managing Director Agreement ("the Agreement") whereby Zarwasch was obliged to protect the interests of SKF Economos.  Plaintiff's Motion for a Preliminary Injunction, Doc. No. 2, Exh. A.  This included keeping confidential information about the company's business, both during and after his employment.  The Agreement prohibited making copies of company documents except for company use and provided that, in case of termination of the agreement, Zarwasch would return to the company all documents, books, records, correspondence, and other papers relating to the company's business.

In August 2009, as a result of complaints from employees, Zarwasch was put on administrative leave.  Zarwasch turned in his SKF Economos computer ("the SKF laptop") on December 7, 2009.  He continued to receive a paycheck until January 31, 2010, at which time his employment terminated.

On May 17, 2010, Zarwasch filed an action in the Cuyahoga County, Ohio Court of Common Pleas against SKF Economos and other defendants for breach of an employment contract, unjust enrichment, promissory estoppel, and tortious interference with a business relationship.  Defendants removed that case to federal court on June 15, 2010.

On June 11, 2010, an attorney representing SKF Economos and other

---

[1] The company was then known as Eco Seal Tech.  The company has changed its name and ownership several times in the past seven years.

2

defendants in the action initiated by Zarwasch, sent Zarwasch's attorney by fax the following letter, here in relevant part:

> While we are waiting for the final number, we understand that there were a [sic] many as five thumb drives (and possibly more) and one hard drive connected to Mr. Zarwasch's SKF computer, in addition to other devices. **Please take all steps, as required by law, to preserve these devices, as well as all other electronic and other evidence** related to Mr. Zarwasch's claims and the counterclaims.
>
> If you have any questions about this, please contact me immediately.

Motion for Spoliation Sanction, Exh. C (emphasis added).  Fax information accompanying the message indicates that the transmission of the message was successful.

SKF USA filed an action against Zarwasch and Heza on July 13, 2010.  SKF USA alleges that Zarwasch set up his own company, Heza, to compete with SKF USA and used confidential information obtained from SKF Economos in Heza's operations.  On July 23, 2010, after a conference with the parties, the court issued, in relevant part, the following order:

> Defendants shall give a forensic expert appointed by plaintiff access to all external drives (including but not limited to thumb drives, USB drives, and hard drives) and computers owned or rented by defendants, Helmut Zarwasch-Weiss and Heza Seal, LLC on or before noon on Wednesday, July 28, 2010.  Plaintiff's expert shall make forensic images of these drives on site.  If it is not possible to make on site forensic images of the drives of any laptop computers owned or rented by the defendants, defendants shall permit the forensic expert to remove the laptop computers to a place where such forensic imaging may be performed.  On or before Monday, August 2, 2010 at noon, the forensic expert shall return to defendants any laptop computers taken from them.

Notice and Order, July 23, 2010, Doc. No. 9, p. 1.

After expert examination of the electronic devices produced by defendants, SKF USA moved for a spoliation sanction against both defendants.  SKF USA sought a

3

sanction of a judgment against the defendants or, in the alternative, a non-rebuttable adverse evidentiary inference that the missing evidence contained SKF's trade secrets and confidential and proprietary information and that defendants used this information. Defendants opposed SKF's motion.

On November 10, 2010, the court held a spoliation hearing.  Shortly after the hearing, the court issued preliminary findings of fact and conclusions of law, including the following factual findings.  Zarwasch copied extensive amounts of confidential information belonging to SKF to which he had access by virtue of his position at SKF Economos.  He took this information with him when he left SKF Economos.  He used SKF's confidential information in conducting Heza's business.  When ordered by the court produce all relevant electronic devices and documents, he deliberately and intentionally failed to do so.  His testimony regarding his use, location, possession, and failure to produce these devices and documents was incredible and, in many respects, false.  The court concluded that Zarwasch spoliated evidence and that SKF USA was entitled to adverse inferences from this intentional failure to produce that evidence. These inferences support the conclusions that Zarwasch extensively used SKF's confidential  information in conducting Heza Seal's business and that he remained in possession of extensive amounts of SKF's confidential information.

The court conducted a combined hearing on SKF USA's motion for a preliminary and a permanent injunction and trial on the merits of plaintiff's claims on November 17-23, 2010.  The hearing included the following evidence regarding the use of a Toshiba computer in 2010.

The Heza computers had shared e-mails sent from a computer identified as

4

"ToshibaZW." Attached to these e-mails were documents containing confidential SKF Economos information. Some documents on the Heza computers existed only as attachments to e-mails. The metadata for an SKF Economos price list attached to the March 16, 2010 e-mail indicated that this document had been created on March 9, 2010 and was last saved on March 16, 2010 by Helmut Zarwasch on a computer identified by the Microsoft Office program as "Toshiba."[2] Similarly, the metadata for the versions of the Heza business plan e-mailed on March 15, 2010 and June 1, 2010 described the documents as created on January 13, 2010 and last saved by Helmut Zarwasch. One of the versions of the business plan also described the document as saved on "Toshiba." In addition, a computer appeared on Heza's computer network that had not been produced for imaging, The registry hive indicated that this was a ToshibaZW computer belonging to Windows user "Helmut" and labeled "the Zarwasch desktop." The "Helmut" account was created on June 18, 2010 and was in use between then and June 21, 2010. Plaintiff's expert testified that the ToshibaZW may have been in use on the network after that date but that he was not able to ascertain this one way or the other. On June 5, 2010, two e-mails sent by Zarwasch failed of delivery. The failure message back to sender gave the messages as originating from a ToshibaZW computer. The messages that failed of delivery were two of the messages identical to the e-mails with attached business plans sent on June 1, 2010. Finally, on June 25, 2010, the e-mail delivery system sent a message failure notice back to Zarwasch,

---

[2] Zarwasch testified that between December 7, 2009, when he turned in his SKF laptop, and November 10, 2010, the date of the spoliation hearing, he did not use any computer other than those at Heza and computers publicly available at hotels at which he stayed. He specifically denied using the Toshiba computer he bought on November 24, 2009 for any purpose other than to set it up for his brother.

reporting that one or more of the intended recipients could not be reached. The message failure notice indicated that the intended e-mail had originated from Helmut@Zarwasch.com and came from a computer identified as ToshibaZW.

From the testimony and exhibits presented at the hearing and trial and from the parties' pleadings, the court reached the following findings of fact and conclusions of law. Zarwasch improperly acquired SKF Economos's confidential information in a variety of ways. Zarwasch secretly copied about 489,000 files on his SKF laptop to other electronic devices. He took this information with him when he left SKF Economos. The copied information included SKF Economos's customer list. Zarwasch's telephone also contained contact information for SKF Economos customers. When Zarwasch left SKF Economos, he did not notify SKF Economos that his telephone contained that information or delete that information from his telephone. Zarwasch had access to this information by virtue of his position at SKF Economos. He also reconstructed from memory portions of SKF Economos's customer list and vendor discount information.

Zarwasch also improperly disclosed SKF Economos's confidential information. The business plans that Zarwasch used to seek loans for Heza included SKF Economos's financial information, including historical sales data. Zarwasch also sent information about SKF Economos's costs of raw materials including price discounts for those materials, to Wolfgang Prandl, who represented DMH, a competitor of SKF Economos. Zarwasch also sent SKF's customer database to Peter Holzer at Machine in Motion, another competitor of SKF Economos.

In addition, Zarwasch misappropriated SKF Economos's confidential information by using it. He used SKF Economos's customer list when he sent e-mails announcing

6

the formation of Heza to individuals on that list.  He used SKF Economos's confidential financial information when he incorporated it into his business plans and used those plans in an effort to attract lenders.  Zarwasch also used confidential information about the pricing and discounting of the raw materials obtained by SKF Economos to negotiate on behalf of Heza with potential sellers of raw materials.  Moreover, Zarwasch remained in possession of large amounts of SKF Economos's confidential information.

From these and other facts adduced at the hearing and trial, the court found that Zarwasch and Heza had misappropriated SKF Economos's trade secrets, that this misappropriation had damaged SKF Economos, and that their conduct had been willful and malicious.  *See* Memorandum of Opinion, February 3, 2011, Doc. No. 106.  On the basis of these and other findings, the court found for plaintiff on Counts I and II of the complaint, alleging violations of the Ohio Uniform Trade Secrets Act ("OUTSA") and breach of contract; found that Counts III, IV, and VI of the complaint were preempted by the OUTSA and dismissed them with prejudice; and dismissed Count V of the complaint, intentional interference with business relationships, on the merits.  The court also denied SKF USA's motion for a temporary injunction as moot upon its grant of a permanent injunction against defendants, prohibiting them from engaging in business relations of any kind with any entity on SKF Economos's customer list until August 4, 2012. Finally, the court ordered defendants to purge from their possession and return to SKF all trade secrets and confidential information and to retain an independent auditor at their expense to verify their compliance with the purge and return.  The court specifically directed that a Toshiba laptop, which it found that Zarwasch had used to misappropriate, disclose, and use SKF Economos's information, must be included in the

7

compliance audit.

On March 29, 2011, SKF USA moved for spoliation sanctions and to show cause why defendants should not be held in contempt based upon the following.  In response to the court's order to produce the Toshiba laptop, Zarwasch had produced a computer hard drive which he represented as having been installed in the Toshiba laptop.  The hard drive had eight holes drilled into it.  He also produced a Toshiba laptop computer with the hard drive and power source missing.  He claimed that he had given the laptop to his brother in Austria and, when he requested its return, his brother had sent it back in this condition.

The court held a hearing on plaintiff's motions for spoliation and contempt on Thursday, June 2, 2011 at 9:00 a.m.  It was impossible to determine whether the hard drive had been installed in the Toshiba laptop at any time in the past or to determine anything about how either the hard drive or laptop had been used prior to their production.  In particular, it was impossible to determine if any external memory devices had been attached to the Toshiba laptop prior to the destruction of the hard drive.  Although the court did not award spoliation sanctions or find Zarwasch in contempt, it found that in many respects Zarwasch's testimony was not credible.

The court reached no conclusion as to who destroyed the hard drive.  The Toshiba laptop produced, however, appeared to be the same model and have the same identification number as the Toshiba laptop purchased by Zarwasch in the latter part of 2010.  The court concluded from evidence produced during the trial on the issue of liability and during the spoliation hearing that, at the very least, Zarwasch continued to use the Toshiba laptop until June 2010 and sent it to his brother to avoid discovery of

information on its hard drive. Consequently, although Zarwasch may not have been directly responsible for the destruction of the hard drive, his deliberate violation of his discovery obligations was a cause of the hard drive's destruction. *See* Order, June 30, 2011, Case No. 1:10-cv-1548, Doc. No. 136, pp. 11-12.

On June 27, 2011, the court conducted a teleconference with the parties as a result of plaintiff's contention that defendants had failed to produce an accurate version of Heza's 2010 financial reports and had spoliated information necessary to plaintiff's case for damages. Zarwasch represented that the version of the 2010 financial report he gave to plaintiff was the only version in his possession and that any deletions were the result of his attempts to purge SKF Economos's confidential information from his computer systems. The court did not have enough information to determine whether Zarwasch had spoliated evidence, and it reserved that issue for the trial as to damages.

On September 19 and 20, 2010, the court conducted a trial as to damages in Case No. 1:10-cv-1548. Plaintiffs produced evidence during the trial that in January 2011 Zarwasch deliberately purged from Heza's accounting program, AccountEdge, information related to Heza's revenues, costs, profits, and deposits for 2010. The only information remaining in AccountEdge was information related to open accounts.

Zarwasch's testified that he inadvertently deleted the missing information from AccountEdge in the course of closing out the 2010 fiscal year and that backups of the deleted information could not be located. The court finds this testimony not to be credible, for four reasons. First, Zarwasch testified that he had been using the AccountEdge program for many years and was familiar with its operation. Second, evidence regarding how AccountEdge conducted a year-end close demonstrated that

9

an inadvertent purge of information during a close was extraordinarily unlikely, even if the user were a novice. Third, Zarwasch had not, at the time he purged the information, prepared Heza's tax returns for 2010. Consequently, that he would have deleted the fiscal information without having a reliable backup file in a known and accessible location strains credulity. Fourth, Zarwasch lacks credibility as he has persistently and deliberately failed to fulfill his discovery obligations and repeatedly lied to the court about his conduct during the course of this litigation.[3] Consequently, the court concludes that Zarwasch deliberately deleted financial information from the AccountEdge program to prevent plaintiff from discovering Heza's fiscal condition and sales to SKF Economos's customers.

The expert in damages assessment hired by plaintiff, Patricia Domzalski ("Domzalski"), testified that she had great difficulty determining the extent of the damages caused by Zarwasch's misappropriation of SKF Economos's trade secrets because much of Heza's 2010 financial information was missing from AccountEdge. In particular, there was little information from which she could assess the 2010 revenue stream to Heza. Domzalski, by relying substantially on information other than that contained in AccountEdge, determined that Heza had obtained revenue from 42 entities that had been on the SKF Economos customer list that defendants misappropriated ("the 42 customers"). Domzalski was unable to determine fully the total revenues Heza

---

[3] Zarwasch had earlier testified in a deposition that he was unable to retrieve Heza's invoices from 2010 in numerical order from the AccountEdge program. This information was essential to determine which of Heza's revenues came from which customers, so that the revenue improperly diverted from SKF Economos's customers could be accurately assessed. During the trial as to damages, Zarwasch testified that he had just discovered three days earlier that he was able to retrieve the necessary invoices after all.

10

received during 2010 and could not determine fully the revenues attributable to each of those 42 customers.

The information missing from Heza's financial records was considerable. Domzalski was able to locate only 13 invoices for the 2010 fiscal year for which there were corresponding purchase orders indicating that an order had actually been placed. In addition, due to the missing information, Domzalski was forced to use four boxes of disorganized financial documents and a collection of hard copies of invoices rather than quickly sorting the information from the AccountEdge program to reconstruct Heza's 2010 financial data. Even after using the hard-copy financial documents, however, Domzalski was unable to locate at least 200 invoices from the relevant period. The resulting assessment of damages based on Heza's revenue from the 42 customers was incomplete and understated, and took much longer to reconstruct because of Zarwasch's destruction of much of Heza's 2010[4] financial information.

In addition, Zarwasch failed to supply other information that might have assisted Domzalski. According to Domzalski, "Zarwasch claimed he has no records of cash receipts for HEZA for 2010; has not completed his taxes for 2010 and could not recall what information he had given to his accountant; [and] could not provide a chronological list of all invoices that HEZA has issued since it started . . ." Expert Report, Trial Exh. 320, p. 7 (citations omitted). Zarwasch also failed to produce sufficient information regarding his Austrian bank account to allow Domzalski to determine if HEZA deposits

---

[4] At the beginning of the damages hearing, Zarwasch represented to the court that he filed his tax returns the previous Friday and provided the original to SKF Economos for copying.

11

had been made there, and he refused to allow her to talk to his accountant.[5]

Domzalski also testified that her assessment of damages resulting from Zarwasch's misappropriation of SKF Economos's trade secrets was conservative because she only included as damages revenue from the 42 customers that she could positively confirm. Heza's partial financial information for 2010 did not, for the most part, permit determinations of which revenue came from which customers. Thus, Domzalski's conclusions regarding revenue from the 42 customers during 2010 were necessarily an underestimation.

Domzalski further testified that she determined SKF Economos's damages by conservatively estimating Heza's total revenue from the 42 customers then multiplying the result by a contribution margin. The contribution margin is an estimate of profits that subtracts only variable costs of production for filling the orders represented by the related revenue.[6] Domzalski determined Heza's revenue from the 42 customers through March 1, 2011 to be $340,210 and estimated Heza's contribution margin as 37%. Consequently, she determined that Heza should disgorge $125,878 in profits to

---

[5] The extent of the irregularities in Heza's financial records was reflected in Domzalski's testimony that Heza's total revenue from only the 42 customers through March 1, 2011 was at least $340,210, while deposits in the only acknowledged Heza bank account, at First Merit Bank, totaled just $331,277 through March 31, 2011. Moreover, Domzalski testified that the totals in three reports generated by AccountEdge, the Sales Register, the Sales Customer Detail, and the Sales Customer Summary, should agree. In Heza's case, however, the totals were $1,304,714; $1,286,314; and $75,326, respectively. According to Domzalski, the lack of agreement between these reports is not consistent with normal accounting and bookkeeping practices.

[6] "The contribution margin percentage represents the percentage of profit from sales taking into consideration only variable costs including direct labor and materials. Fixed costs are excluded since they continue to exist regardless of sales volume." Expert Report at 7.

12

SKF Economos.[7]

Domzalski's testimony, methodology, assumptions, and data selection are in accordance with general damages assessment principles. Her testimony was consistent, coherent, and unrebutted. Consequently, the court finds Domzalski's testimony to be credible and adopts her report in its entirety.

In sum, the court makes the following findings of fact with respect to the issue of damages:

1.  Zarwasch deliberately deleted financial information from the AccountEdge program to prevent plaintiff from discovering Heza's fiscal condition;

2.  Zarwasch's deliberate deletion of information created considerable additional work for plaintiff's expert;

3.  Zarwasch's deliberate deletion of information resulted in an estimate of damages that understates the amount of revenue Zarwasch diverted from SKF Economos by his misconduct; and

4.  Zarwasch diverted a minimum of $125,878 in profits from SKF Economos through his misconduct.

## II. Conclusions of Law

The court found Zarwasch liable to SKF Economos for violations of the OUTSA and for breach of contract. As will be seen, damages pursuant to the OUTSA include all

---

[7] Plaintiff seeks a non-rebuttable adverse inference that the damages determined by Domzalski reflect a minimum estimate of sales by former SKF Economos customers. A federal court has broad discretion to adopt such an adverse inference upon a finding that a party destroyed (1) evidence relevant to the other party's claims (2) while under an obligation to preserve it (3) with a culpable state of mind. *Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 553 (6th Cir. 2010). While the court does not find it necessary to make such an inference in this case, Zarwasch's conduct permits such an adverse inferense

13

damages potentially recoverable for breach of contract. *See Rhodes v. Rhodes Indus., Inc.*, 71 Ohio App. 3d 797, 809, 595 N.E.2d 441, 448 (1991) (finding that damages for breach of contract may be measured by lost profits). Consequently, the court shall measure damages pursuant to the OUTSA. The court shall also address the issue of spoliation, reserved at the court's June 27, 2011 teleconference for consideration after the trial on damages, and the issue of attorney's fees resulting from Zarwasch's spoliation of evidence.

*A.     Damages pursuant to the OUTSA*

Ohio Rev. Code §§ 1333.63 ("§ 1333.63") and 1333.64 ("§ § 1333.64") address damages for misappropriation of trade secrets. In relevant part, § 1333.63 provides as follows:

> (A) . . . [A] complainant in a civil action is entitled to recover damages for misappropriation. Damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. . . .
>
> (B) If willful and malicious misappropriation exists, the court may award punitive or exemplary damages in an amount not exceeding three times any award made under division (A) of this section.

Section 1333.64(C) provides that "[t]he court may award reasonable attorney's fees to the prevailing party, if . . . [w]illful and malicious misappropriation exists."

The court has found that Zarwasch diverted a minimum of $125,878 in profits from SKF Economos through his misconduct. Consequently, the court concludes that an award of $125,878 pursuant to § 1333.63(A) is appropriate to compensate SKF Economos for its actual loss.

The court has previously determined that Zarwasch's misappropriation of SKF Economos's trade secrets was willful and malicious. After considering the extent and

14

gravity of Zarwasch's misconduct in misappropriating and using SKF Economos's trade secrets, and also considering that Zarwasch's conduct has made it impossible to determine the actual extent of damages in this case, the court concludes that an award of treble damages as punitive damages pursuant to § 1333.63 is appropriate.

The court also concludes that, given Zarwasch's willful and malicious misappropriation of SKF Economos's trade secrets, an award of reasonable attorney's fees is appropriate.  The court also finds that this litigation was unnecessarily and substantially protracted by Zarwasch's repeated spoliation of evidence and failure to fulfill his discovery obligations.  The court, therefore, awards attorney's fees pursuant to the OUTSA in an amount equal to the damages awarded as a sanction for spoliation of evidence, as described below.

*B.     Spoliation of evidence*

Courts have broad discretion to impose sanctions for spoliation of evidence.  *See Beaven v. United States Dept. of Justice*, 622 F.3d 540,  (6th Cir. 2010).  "[A] district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence."  *Id.* at *9 (quoting *Adkins v. Wolever,* 554 F.3d 650, 653 (6th Cir. 2009)).  The severity of a sanction for spoliation should correspond to the spoliating party's degree of fault under the circumstances, "including the recognition that a party's degree of fault may 'rang[e] from innocence through the degrees of negligence to intentionality.'"  *Beaven*, 2010 WL 3730909 at *9 (quoting *Adkins*, 554 F.3d at 652-53).  Sanctions available to courts for spoliation include an award of attorney's fees.  *See, e.g., Stratienko v. Chattanooga-Hamilton County Hosp.*

15

*Auth.*, 402 Fed. Appx. 990, 2010 WL 4643282, at *2 (6th Cir. Nov. 17, 2010).

In the present case, the court found on November 16, 2010 that Zarwasch deliberately destroyed or failed to produce electronic devices and documents that he was ordered to produce by the court and that this conduct constituted spoliation.  On June 30, 2011, the court found that Zarwasch's culpable conduct contributed to the destruction of the Toshiba hard drive and that, therefore, he was liable for spoliation of evidence.  The court also now concludes from the above findings of fact and conclusions of law that Zarwasch spoliated evidence by deliberately destroying much of Heza's 2010 financial information to prevent plaintiff from discovering Heza's fiscal condition and sales to SKF Economos's customers.

The court has held two hearings addressing Zarwasch's spoliation of evidence.  The first, on November 10, 2010, concerned Zarwasch's destruction or concealment of electronic devices and documents that he was ordered to produce by the court.  The second, on June 2, 2011, concerned the destruction of the Toshiba laptop's hard drive.  As sanction for Zarwasch's repeated spoliation of evidence, the court awards plaintiff all reasonable attorney's fees related to adjudication of plaintiff's motions for sanctions and contempt.  Doc. nos. 47, 116, and 117.

Finally, Zarwasch's purging of Heza's financial information increased the time required to ascertain, as best as possible, Heza's relevant financial data to determine damages.  Consequently, the court awards plaintiff all reasonable attorney's fees, costs, and expenses (including expert fees) pertaining to the reconstruction of that evidence.  In addition, the court awards plaintiff costs as the prevailing party in this action pursuant to 28 U.S.C. § 1920.

III.  Conclusion

For the reasons given above, the court awards plaintiff $125,878 in compensatory damages, $377,634 in punitive damages, and reasonable attorney's fees, costs, and expenses in an amount yet to be determined.

To determine the proper amount of attorney's fees, costs, and expenses, attorneys for plaintiff shall file an application (including appropriate affidavits) for an award of fees, costs, and expenses within 30 days of the date of this Memorandum and Order.  Defendant shall have 30 days from the filing of plaintiff's application to conduct discovery.  Defendant must file a response to plaintiff's application within 30 days after the close of discovery.  When the court enters judgment in this matter, it shall award the damages, attorney's fees, costs, and expenses described above.

**IT IS SO ORDERED.**


Date:  October 3, 2011                    s/ *Nancy A. Vecchiarelli*
                                          NANCY A. VECCHIARELLI
                                          UNITED STATES MAGISTRATE JUDGE