**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| HELMUT ZARWASCH-WEISS, | ) | CASE NO.   1:10-cv-01327 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SKF ECONOMOS USA, INC. *et al*, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| | ) | |
| SKF USA INC., | ) | CASE NO.   1:10-cv-01548 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| HELMUT ZARWASCH-WEISS *et al*, | ) | |
| | ) | Doc. No. 101 |
| Defendants. | ) | |

This case is before the magistrate judge on consent.  Before the court is the motion of defendants, SKF Economos USA, Inc. ("SKF Economos"), SKF USA, Inc. ("SKF USA"), Christopher Wierling, Angelo J. Galli, Timothy Gifford, Robert Corley, Jeff Nelson, and David Lewandowski (collectively, "the individual defendants"), for summary judgment as to all claims against them.   Docket No. 101.   Plaintiff, Helmut Zarwasch-Weiss ("Zarwasch"), opposes this motion.  Doc. No. 110.  For the reasons given below, the court GRANTS defendants' motion in its entirety.

I.

The court views the facts, as it must, in the light most favorable to Zarwasch, the party opposing the motion for summary judgment.  Nevertheless, "[t]he court's duty to view

the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Chappell v. City Of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009).  The court's charge is to view in the light most favorable to Zarwasch those facts for which he offers more than a scintilla of admissible evidence.  "[T]o withstand a properly supported motion for summary judgment, plaintiff . . . is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits,' showing that there is a genuine issue for trial."  *Id.* at 912 (quoting  Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986)).  Where a nonmovant relies "merely on allegations," the court may not accept those allegations as fact.  *Id.* at 906.  The following facts are uncontested upon the record before the court.

Zarwasch was General Manager of Economos Philippines Co., Ltd. from 1999-2003, Regional Sales Manager for Economos for South East Asia for Economos Austria from 1999 to 2003, and General Manager of Economos Seals (Thailand) Co. Ltd. from 2001-03. In 2003, he came to the United States and became managing director of what was then Eco Seal Tech, now known as SKF Economos.

In the course of his employment by the various Economos entities, Zarwasch entered into a series of employment contracts.[1]  Each of Zarwasch's employment contracts from 2000 through 2006 were for a specified term of years and provided that it could be terminated by either party on notice.  His 2000 employment contract with Economos Philippines, Ltd. and his 2001 employment contract with Economos Seals (Thailand) Co. Ltd. were each for a three year term and could be terminated by either party after giving one month's notice.  Zarwasch's 2003 employment contract with Economos USA, Inc.

---

[1] These employment contracts were entered into evidence in the consolidated case, *SKF USA, Inc. v. Zarwasch-Weiss*, Case No. 1:10-cv-1548.  Exhibits entered by SKF USA as trial exhibits in that case shall be designated "Tr. Exh."  The employment contracts in question were entered as Tr. Exhs. 94, 98, and 99.

2

("Economos USA") was also for a three year term but could be terminated by either party after giving three months' notice.  None of these employment agreements required either party to show cause for termination of the contract.

On January 1, 2006, Zarwasch and the immediate predecessor to SKF Economos, Economos USA, entered into a Managing Director Agreement ("the Agreement"). Defendants' motion, Exh. 9.  The Agreement did not specify that it would run for a particular term of years.[2]  Rather, it provided merely that it would run until terminated in accordance with its terms.  One of the Agreement's terms was that it could be terminated by either party upon three months' notice.  The Agreement did not require either party to give cause for termination of the contract.  Paragraph 11 of the Agreement provided in relevant part as follows:  "No verbal agreements shall be in force.  Changes to this agreement must be in writing."  Agreement at 3.

During 2006, SKF Austria purchased Economos USA, and it became a wholly-owned subsidiary of AB SKF as SKF Economos.  AB SKF also had another wholly-owned subsidiary in the United States, SKF USA, Inc. ("SKF USA").  AB SKF's policy required SKF USA to consult with all companies affiliated with AB SKF to ensure that those companies complied with United States laws and AB SKF's policies, even if the AB SKF affiliate was not part of SKF USA.  Declaration of Robert Corley ("Corley"), Sept. 12, 2011 ("Corley Decl."), Exh. 4, pp. 1-2.  Among other things, this policy required any company affiliated with AB SKF to involve SKF USA's human resources and legal departments whenever the affiliated company had an issue related to human resources or law.  *Id.*

---

[2]  Zarwasch's First Amended Complaint ("Complaint") alleges that the parties understood that the Agreement was to be for a two-year contractual period.  Complaint, Doc. No. 26, p. 2.  Zarwasch testified Gerhard Schneeweis, the Chairman of the Board of Economos USA, told Zarwasch that he did not want anyone changing positions for two years.  Deposition of Zarwasch ("Zarwasch depo."), July 20, 2011, Defendants' motion, Exh. 6, pp. 165-66.  Zarwasch also testified, however, that this understanding was not a term of the Agreement.  *Id.*

In June 2007, Schneeweis told Zarwasch that SKF Economos wanted Zarwasch to stay in the United States for at least five years, to ensure that SKF Economos built and expanded its business properly.  Declaration of Schneeweis ("Schneeweis Decl."), Defendants' motion, Exh. 10, p. 1.  Zarwasch agreed to stay for an additional five years, but he asked that SKF Economos pay for and otherwise support changing his family's immigration status to permanent residency.  *Id.* at 1-2; *see also* Zarwasch depo. at 166-81.  The SKF Economos board agreed to Zarwasch's request as an incentive for Zarwasch to stay for five years.  Schneeweis Decl. at 2.  During these discussions, the provision that either party could terminate the Agreement upon three months' notice was not discussed or modified.  *Id.*; *see also* Zarwasch depo. at 214-17.

On Zarwasch's Annual Compensation & Expense Report for 2007 signed by Zarwasch and a member of the board of directors of SKF Economos,[3] there is a notation next to Zarwasch's increased base salary for the second half of 2007, "5 years commitment in EcoUSA."  Annual Compensation & Expense Report for 2007, Defendants' Motion, Exh. 11, p. 1.  Zarwasch states that this meant that he committed himself to stay in the United States for five years and did not mean that SKF Economos committed itself to employ Zarwasch for five years.  Zarwasch depo. at 226, 227-28.  There is no indication on that document that SKF Economos made a similar commitment to retain Zarwasch for five years.

In or before July 2008, a Houston employee of SKF Economos, Jason Martz ("Martz"), submitted a complaint to SKF USA about working conditions at SKF Economos's Houston plant.  Zarwasch fired Martz immediately after Martz made his complaint.  As a result of this incident, Robert Corley, the overall head of human resources for SKF USA, became concerned about Zarwasch's handling of human resources issues.  Schneeweis

---

[3] The signature is not clear, but it appears to be "G. Schneeweis."

4

criticized Zarwasch's handling of the situation.  Schneeweis Decl. at 2.  Schneewiess's immediate superior, Dan Reed ("Reed"), told Schneeweis to direct Zarwasch to work with David Lewandowski ("Lewandowski") at SKF USA human resources in all human resources matters "to ensure compliance with United States Law and AB SKF policies."  *Id.* Schneeweis forwarded this directive to Zarwasch and told him on a number of later occasions that he must work with Lewandowski.  *Id.* at 2-3.  Schneewiss also directed Zarwasch that "before he fired anyone or took a personnel action, [he] had to talk with Lewandowski and obtain [Schneewiess's] approval."  *Id.* at 3.  Schneeweis also told Zarwasch that his behavior was creating problems for the company and needed to change. *Id.*

On February 24, 2009, Zarwasch fired Julius Tate ("Tate"), an African-American inside sales employee.  Zarwasch did not discuss Tate with Lewandowski or Schneeweis, as he had been directed.  Declaration of Lewandowski ("Lewandowski Decl."), Defendants' motion, Exh. 12, p. 2; Schneeweis Decl. at 3.  Tate later filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that SKF Economos had discriminated against him on account of race.

On May 27, 2009, employees at the Cleveland facility of SKF Economos sent an anonymous email ("the May email") to Laura Pastore ("Pastore") at SKF USA's human resources department.  Pastore forwarded the May email to Corley and Christoph Wierling ("Wierling"), then Director of Human Resources for SKF USA.  Declaration of Wierling ("Wierling Decl."), Defendants' motion, Exh. 13, p. 2.  The May email alleged that Zarwasch referred to operators as "assholes," referred to Romanians as "gypsies," and referred to blacks as "niggers."  Skfeconomocusa@yahoo.com to Laura D. Pastore@SKF.com, May 27, 2009, Wierling Decl., Exh. A, p. 1.  The May email also alleged that Zarwasch refused to let the employees have a copy of the employee handbook and, that when such a copy was obtained, the employees discovered that Zarwasch had "cheated" them.  *Id.*  In

5

addition, the May email claimed that Zarwasch had someone working at the Cleveland facility who was not on the payroll and was collecting unemployment.  *Id.* at 2.

Wierling showed the May email to Schneeweis, Zarwasch, and Thomas Schwartz at an integration meeting at the end of May.  Wierling Decl. at 2.  Schneeweis directed Wierling to investigate the allegations.  *Id.*  Wierling told Zarwasch not to discuss the complaint with the employees at SKF Economos.  *Id.*

On June 1, 2009, Pastore received a second anonymous email alleging that Zarwasch had told the Cleveland employees of Wierling's instruction not to talk to them about the matter and that he had threatened the writers of the email with termination.  *Id.* When Wierling questioned Zarwasch about the accuracy of these new allegations, Zarwasch confirmed them.  *Id.*  Wierling asked Schneeweis to direct Zarwasch to stay out of the office until Wierling had completed his investigation, and Schneeweis did so.  *Id.* at 2-3.  Schneeweis also told Zarwasch that his threats were unacceptable and counterproductive and that they were making a bad situation worse.  Schneeweis Decl. at 3.

Wierling conducted interviews with the Cleveland employees on June 10-11, 2009. Afterward, he told Zarwasch that his behavior had violated SFK's code of conduct and was not ethical.  Wierling Decl. at 3.  Zarwasch took issue with Wierling's conclusions.  *Id.* Wierling's report found that Zarwasch publically used derogatory language toward employees, often used "inappropriate" language, was secretive regarding company policies, disregarded company policies, and threatened employees.  Memorandum, June 11, 2006, Wierling Decl., Exh. E., p. 2.  The report also stated that Zarwasch denied all allegations against him, accused the employees of making false statements, and failed to demonstrate any awareness that he needed to change or willingness to accept responsibility for misconduct.  *Id.*

On June 29, 2009, Schneeweis received a copy of Tate's complaint to the EEOC.

6

Schneeweis Decl. at 3.  He approved the hiring of Pepper Hamilton, LLC to investigate the Tate firing and Zarwasch's conduct relevant to that firing.  *Id.* at 3-4.  He also agreed that Corley and Corley's subordinate, Angelo Galli ("Galli") would oversee the investigation, to be conducted by Robert Cole ("Cole") of Pepper Hamilton.  *Id.* at 4.

On July 27, 2009, Cole emailed the report of his investigation to Corley, Schneeweis, and Galli.  Cole summarized his findings as follows:

> Mr. Zarwasch has created an intimidating environment and has made statements and taken actions that a reasonable fact-finder could conclude amount to a hostile work-place in violation of applicable laws.  He runs the business as he sees fit and has final say on all matters, responding to dissenters with retaliation, threatened or actual.  He plays favorites and hires and fires people usually without reason or counseling.

> As to Mr. Tate's charge, no one interviewed believes that his separation was based on his race, but given the lack of documentation regarding his performance and the environmental issues in the work-place, the company should give serious consideration to resolving the matter. . . . There is sufficient evidence that Mr. Tate could get to a jury with his claims.[4]

COLE@pepperlaw.com to Robert D Corley@skf.com, July 27, 2009, Schneeweis Decl., Exh. F, p. 1.  In a conference call following this report, Corley recommended that Zarwasch be terminated, and Scneeweiss agreed.  Schneeweis Decl. at 4.  Scneeweiss telephoned Zarwasch and told him that he was suspended with pay effective August 14, 2009 as a result of the reports of Wierling and Cole.  *Id.*  Schneeweis also told Zarwasch not to go to the Cleveland office.  *Id.*

Schneeweis and Ingrid Truyts ("Truyts"), who provided human resources support for AB SKF, tried to find another job for Zarwasch.  *Id.* at 5.  SKF USA was not involved in the search for an alternative position for Zarwasch and did not interfere in any way with that

---

[4]  SKF USA eventually settled litigation brought by Tate for $200,000.  *See* Declaration of Bart Bartholomew, Defendants' motion, Exh. 14, p. 2.

process.  *Id.* at 5.  Schneiweis and Truyts raised several possibilities with Zarwasch, but he found these to be unacceptable.  *Id.*  On October 19, 2009, Zarwasch sent Schneeweis an email expressing his displeasure with the job alternatives he had been given. h.zarwasch@economos.com to Gerhard.Schneeweis@skf.com, October 19, 2009 (the "Oct. 19 email"), Schneeweis Decl., Exh. G.  Zarwasch's Oct. 19 email sketched three acceptable possibilities going forward:  (1) Zarwasch would be restored to his old job; (2) Zarwasch would be offered an acceptable job in southeast Asia; or (3) Zarwasch would be dismissed, with SKF Economos fulfilling certain terms.  *Id.* at 1.  The terms for dismissal included three months' termination notice, with pay during the termination period; a housing allowance, medical coverage, and a car allowance during the termination period; family travel costs; a waiver of liability by Zarwasch and SKF Economos for any matter arising from Zarwasch's employment; a waiver of Zarwasch's five-year contract for $25,000 payable to Zarwasch; and, upon payment of all sums owed to Zarwasch, a declaration that any further demands or agreements are null and void.

On October 30, 2009, Schneeweis told Zarwasch that he would be terminated effective January 31, 2010 and that Galli and Jeffrey Nelson ("Nelson") in SKF USA's human resources department would deal directly with Zarwasch in managing his separation.  Schneeweis Decl. at 5.  Between October 26, 2009 and November 11, 2009, Zarwasch, Galli, and Nelson discussed the terms of Zarwasch's separation agreement.  On October 30, 2009, Galli sent Zarwasch SKF Economos's final position on the subject and told Zarwasch that he had 21 days to consider the agreement and sign it.  When Zarwasch failed to sign and return the separation agreement by the deadline, Galli told Zarwasch that the proposed agreement was withdrawn and that Zarwasch's termination would be effective

8

on January 31, 2010, as Schneeweis had informed Zarwasch.  Deposition of Galli, Defendants' motion, Exh. 15, pp. 69, 74.  Zarwasch was paid through that date, and SKF Economos terminated his employment on January 31, 2010.

This court has previously determined that during the months leading up to his termination, Zarwasch copied extensive amounts of confidential information belonging to SKF to which he had access by virtue of his position at SKF Economos.  Memorandum of Opinion, February 3, 2011 ("Memorandum"), Doc. No. 49, p. 29.  He took this information with him when he left SKF Economos.  *Id.*

Zarwasch filed this action in the Cuyahoga County, Ohio Court of Common Pleas against SKF Economos and other defendants on May 17, 2010 for breach of an employment contract, unjust enrichment, promissory estoppel, and tortious interference with a business relationship.  Defendants removed to federal court on June 15, 2010.

On June 1, 2006, Heza Seal, LLC ("Heza"), a corporation founded by Zarwasch, began operations in competition with SKF USA.   Zarwasch extensively used SKF's confidential information in conducting Heza's business and some or all of that confidential information constituted trade secrets within the meaning of the Ohio Uniform Trade Secrets Acts ("OUTSA").  Memorandum at 30.

On June 22, 2009, defendants answered Zarwasch's complaint and filed counterclaims against Zarwasch for breach of fiduciary duty, fraud, and conversion/unjust enrichment.  An examination of Zarwasch's company laptop computer convinced SKF USA that Zarwasch had used confidential information obtained from SKF Economos in Heza's operations.   In addition, Jim Reynolds ("Reynolds"), an internal auditor at SKF USA, discovered that Zarwasch directed that $10,164.38, which was part of his bonus, be paid

to his two minor children on February 22, 2008.  Declaration of Reynolds, Defendants' motion, Exh. 16, p. 1.  Reynolds also determined that state and federal income taxes had not been properly withheld on these payments.  *Id.* at 2.  Depositions of Zarwasch's children produced evidence that neither child had performed any work for the payment and had not received any of the money from the payment.  Deposition of Stephanie Zarwasch-Weiss, Defendants' motion, Exh. 17, pp. 28-29; Deposition of Johndiel Zarwasch-Weiss, Defendants' motion, Exh. 18, pp. 18-20.  This evidence was, in part, the basis of defendants' counterclaims against Zarwasch.

SKF USA filed an action against Zarwasch and Heza on July 13, 2010.  SKF USA sought damages against both defendants pursuant to the OUTSA, for conversion, for tortious interference with business relationships, and in replevin.  SKF USA also sought damages against Zarwasch for breach of contract and breach of fiduciary duty.  Further, SKF USA sought preliminary and permanent injunctions against defendants.  On February 3, 2011, the court found defendants liable for violations of OUTSA and found that Zarwasch breached his employment contract by misusing and failing to protect SKF Economos's confidential information.  The court also found that the OUTSA pre-empted SKF USA's claims in tort.  Finally, the court granted permanent injunctive relief, including a purge of SKF USA's confidential information from Zarwasch's and Heza's possession and an 18-month ban on their doing business with entities on SKF Economos's customer list.

The defendants in the action filed by Zarwasch now move for summary judgment on Zarwasch's claims.  Zarwasch opposes defendants' motion.

## II.

Summary judgment is appropriate where there are no genuine issues of material fact

10

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.   The moving party can meet this burden in two ways:  by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves," *id.*, or by any other evidentiary material admissible at trial, *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993).  *See also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, 10A, § 2721 (1998).  Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 888-89 (1990).

The trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).  The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment.  *Reeves v. Fox Television Network*, 983 F.Supp.

11

703, 709 (N.D. Ohio 1997).

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 369 F.2d 648 (6th Cir. 1966). In addition, the Court "does not weigh the evidence or make credibility determinations." *Id.* This includes taking the non-moving party's uncontradicted allegations as true and giving the benefit of the doubt to the nonmoving party's assertions when they conflict with those of the movant. *Bishop v. Wood*, 426 U.S. 341 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir. 1974). However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251. As noted earlier, where a nonmovant relies "merely on allegations," the court may not accept those allegations as fact. *Chappell*, 585 F.3d at 906.

### III.

Zarwasch asserts the following claims: (1) breach of contract against SKF USA as successor in interest to SKF Economos; (2) promissory estoppel against SKF USA as successor in interest to SKF Economos; (3) tortious interference with contract against SKF USA; and (4) tortious interference with a business relationship against SKF USA. Zarwasch's complaint fails to state a claim against or make any allegations respecting the

12

individual defendants in this case, nor does Zarwasch advance any evidence in support of such allegations.  As Zarwasch fails to present a case against the individual defendants sufficient to require presentation to a jury, defendants' motion for summary judgment is granted as to the individual defendants.  The court will now examine Zarwasch's claims against the remaining defendant, SKF USA, as successor in interest to SKF Economos and against SKF USA directly.

A.      *Breach of Contract*

Zarwasch claims that SKF Economos breached an amended employment contract with Zarwasch.  Zarwasch offers the following in explanation of the circumstances and nature of the amendment of his Agreement with SKF Economos.[5]

According to Zarwasch, he addressed the SKF Economos board of directors ("the board") in June 2007 and expressed a desire to move back to Southeast Asia.  The board wanted to keep Zarwasch as president of SKF Economos and offered him a two-year contract if he would agree to this.  Zarwasch declined and made a counter-offer that he would stay in return for a five-year contract with an option for him to extend the contract for three years after the initial five-year renewal period.  The board accepted this offer and promised an equivalent assignment in Southeast Asia upon conclusion of his duties as president of SKF Economos.  When Zarwasch pointed out that his work visa would not cover the entire period envisioned in the amended contract, the board agreed to pay for Zarwasch and his family to change their immigration status. Zarwasch further asserts, "The changes have been in writing by Zarwasch and confirmed by the Board Members.  The

_____

[5]   The allegations contained in the following account are found in the Amended Complaint, Doc. No. 26, pp. 4-5 and in Zarwasch's Response, pp. 3-4, 6-7, and 9-10.

accepted offer of a five-year contract is clear and in writing to the Board of Directors."

Response at 6-7.  Zarwasch appends to his Response the Oct. 22 email that Zarwasch

maintains manifests SKF Economos's assent to such an agreement.  Zarwasch denies that

a clause permitting termination for cause was discussed or added by writing to the

amended contract.  Zarwasch concludes that SKF Economos breached the modified

Agreement when it terminated him on January 31, 2010 nearly a year before the expiration

of the initial term of his alleged five-year contract.

Defendants reply that the parties to the Agreement did not amend it.  Rather,

defendants contend that, in an entirely separate agreement, Zarwasch agreed to stay in

the United States as president of SKF Economos for five years in return for assistance and

funding for changing his and his family's immigration status to permanent residency.  This

agreement, according to defendants, was expressed in an exchange of emails between

Zarwasch and Schneeweis on June 6-7, 2007.  Schneeweis Decl., Exh. A.  The parties

disagree, therefore, as to whether the Agreement was modified or was supplemented by

an additional agreement and disagree as to the terms of any additional modification or

supplement.

There are three reasons why Zarwasch's position is without merit.  First, Zarwasch

fails to prove that the Agreement was amended to grant Zarwasch a five-year term of

employment.  Second, he cannot enforce the Agreement against SKF Economos because

Zarwasch breached the Agreement before SKF Economos's alleged breach.  Third, even

if Zarwasch were able to demonstrate that the Agreement was modified to grant Zarwasch

a five-year term of employment, his termination would not have been a breach of the

modified Agreement because Zarwasch fails to overcome Ohio's presumption that, absent

14

explicit contractual terms to the contrary, an employee may be fired for cause.

    *1.    Amendment of the contract*

    The Agreement between Zarwasch and SKF Economos includes the following provision:  "No verbal agreements shall be in force.  Changes to this agreement must be in writing."  Agreement at 3.  Zarwasch contends as follows:

> Zarwasch does have the evidence that is needed to alter the contract.  The contract does state that all changes have to be in writing.  The changes have been in writing by Zarwasch and confirmed by the Board Members.  The accepted offer of a five-year contract is clear and in writing to the Board of Directors.

Response at 6-7.  In support of this contention, Zarwasch offers a single piece of evidence, an email from Heidegger to Nelson, October 22, 2009, unnumbered exhibit ("the Oct. 22 email").  This email is not authenticated by way of affidavit.  The Oct. 22 email reads in relevant part as follows:

> Helmut Zarwasch is expecting action from us with regards to his actual employment with SKF Economos USA Inc.  He is asking for an end to the contract!

> We strongly suggest to make a mutual agreement with him under the following conditions:

> 1.    Continue to pay monthly fixed salary till year end 2009 . . . .

> 2.    Compensation for the pre-mature ending of the 5-years-commitment to the amount of 3 monthly fixed salaries. . . .

> Ad point 2, Helmut's contract so to say ends 2.5 years pre maturity.  He says that in case of wrongful dismissal, the open contract he would get as a compensation (he talking about USD 400K) . . .

> His actual yearly salary is USD 98k, +25% variable bonus.  He has a company car and a yearly housing allowance of USD 18k.

> That was what we has told him in June 2007 when he verbally committed to stay on in USA for Economos for another 5-years-period.

The Oct. 22 email at 1-2.  Heidegger was the CFO of SKF Economos GmbH at the time

he sent Oct. 19 email.

Defendants argue that Zarwasch has offered no admissible evidence that SKF Economos agreed to a modification of the Agreement.  Defendants are correct.  The Oct. 22 email that Zarwasch offers in support of his claim is not admissible evidence, as that email has not been authenticated.  *See* Fed. Evid. R. 901, 902.  Zarwasch fails to offer admissible evidence, therefore, to demonstrate that SKF Economos agreed to a modification of the Agreement.

Moreover, the Oct. 22 email, on its face, does not reflect agreement to a contract because it gives no indication that the two parties mutually assented to the alleged terms of the agreement.  Rather, it appears to be an internal discussion that assumes as true, without examining, the premises behind Zarwasch's Oct.19 email.  *See supra.* at 8.

Finally, the proffered Oct. 22 email is not a change in the Agreement made in writing.  Rather, that email is merely a written reference to an alleged modification made either orally or in some other writing.  If the alleged modification was made orally, then it is not a written modification as required by the Agreement.  If the alleged modification was made by some other writing, then that writing must be produced as evidence of the new agreement.[6]  Zarwasch does not produce that writing, nor does he explain why is fails to

---

[6]  Elsewhere, Zarwasch seems to indicate that the alleged agreement to give Zarwasch a five-year term contract was made orally and was later memorialized in writing:

> Zarwasch's contract has been altered upon request by the Board of Directors.  In June/July Zarwasch had re-negotiated his contract with Economos.  The term that was changed was an unlimited (open) contract with a binding duration for both sides.  This fact was confirmed in writing by all board members and the CFO of Economos Austria Gmbh Leopold Heidegger.

Response at 3.  If that is the case, then the written confirmation must be produced to substantiate Zarwasch's claim.

16

do so.

To summarize, even if the proffered Oct. 22 email were admissible as evidence, it is insufficient to prove that the parties effected a written modification of the Agreement. Consequently, Zarwasch fails to offer admissible evidence that the parties modified the Agreement to give Zarwasch a five-year term of employment.

*2.      Prior breach*

Under Ohio law a breach of contract occurs when a party demonstrates (1) the existence of a binding contract or agreement, (2) the nonbreaching party performed its contractual obligations, and (3) the other party failed to fulfill its contractual obligations without legal excuse.  *See Natl. City Bank v. Erskine & Sons*, 158 Ohio St. 450, 110 N.E.2d 598 (1953); *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App. 3d 95, 108, 661 N.E.2d 218, 226 (1995);*Cairns v. Ohio Sav. Bank,* 109 Ohio App. 3d 644, 647, 672 N.E.2d 1058, 1060 (1996).

Neither party contends that the Agreement was not an enforceable, express contract under Ohio law.  Zarwasch alleges, however, that SKF Economos breached the Agreement by terminating him on January 31, 2010.  As noted above, however, this court has already found that Zarwasch breached the Agreement with SKF Economos by misappropriating and failing to protect SKF Economos's confidential information in the months before Zarwasch's termination.  Thus, Zarwasch cannot now argue that he performed his contractual obligations under the Agreement.  Because Zarwasch failed to fulfill his contractual obligations under the Agreement, he cannot enforce a breach of the Agreement against SKF USA as the successor in interest to SKF Economos.  For this reason, his claim for breach of contract is without merit.

17

3.    *Failure to overcome Ohio's presumption that an employee may be terminated for unsatisfactory performance*

Ohio law presumes that even when an employer is otherwise constrained from terminating an employee at will, the employee may nevertheless be terminated for unsatisfactory performance.  "The norm in employer-employee relations is that employees may be terminated for poor job performance.   When claiming that this norm is not applicable, an employee must point to specific representations by the employer indicating that termination would not be based upon performance."  *Penwell v. Amherst Hosp.*, 84 Ohio App. 3d 16, 20, 616 N.E.2d 254, 257 (1992); *see also  Alloway v. WLW, Inc.*, 2000 WL 799101, at *4 (Ohio App. June 21, 2000).

Under an employment agreement of definite duration, the employer must have just cause to terminate the employee. *Jones v. East Center for Community Mental Health, Inc.* (1989), 19 Ohio App.3d 19, 22 (1989), *overruled on other grounds by Jones v. East Center for Community Mental Health, Inc.*, 19 Ohio App.3d 19, 482  N.E.2d 969 (1984).  Ohio law defines "just cause" in the employment context as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act."  *Young v. Int'l Broth. of Locomotive Engineers*, 1993 WL  227069, at *5 (Ohio App. June 24, 1993) (quoting *Irvine v. Unemployment Comp. Bd. of Review*, 19 Ohio St.3d 15, 17, 482 N.E.2d 587, 589 (1985)).  Ohio courts have also held, "To justify the discharge of an employee before the expiration of the term of employment, it is sufficient for the employer to show that the employee was guilty of a default in duty whose natural tendency was to injure his business, and actual injury thereto need not be shown."  *Hosking v. Hollaender Mfg. Co.*, 114 Ohio App. 70, 71, 175 N.E.2d 201, 203 (1961) (quoting *Dayton Rubber Mfg. Co. v. Brown*, 116 Ohio St. 373, 156 N.E. 136 (1927)).

18

Zarwasch fails to point to specific representations by SKF Economos indicating that a termination would not be based upon performance.  Indeed, Zarwasch states in his Response that "no clause for cause was either discussed nor put in writing by either party during or after negotiations in June 2007."  Response at 10.  Because Zarwasch fails to point to specific representations by SKF Economos indicating that a termination would not be based upon performance, he fails to overcome Ohio's presumption that SKF Economos was entitled to terminate him for unsatisfactory performance.

Nor does Zarwasch offer any evidence to counter defendants' argument that his discharge for just cause was improper or pretextual.  Two investigations determined that Zarwasch's performance was seriously problematic.  Wierling determined that Zarwasch had violated SFK's code of conduct and was not ethical and that Zarwasch publically used derogatory language toward employees, often used "inappropriate" language, was secretive regarding company policies, disregarded company policies, threatened employees, and failed to demonstrate any awareness that he needed to change or willingness to accept responsibility for misconduct.  The Cole investigation found that Zarwasch created an intimidating environment, made statements and took actions that a reasonable fact-finder could conclude amount to a hostile work-place in violation of applicable laws, responded to dissenters with retaliation, played favorites, and hired and fired people usually without reason or counseling.  Cole further determined that Zarwasch's actions left SKF Economos in danger of liability from Tate pursuant to a suit for racial discrimination, and SKF eventually settled with Tate for $200,000 as a consequence. Finally, Zarwasch disobeyed his superiors' direct instructions not to talk about or interfere with the Zwerling investigation, to work with SKF USA's human relations division in all

19

employee matters, and to consult with and get the approval of Schneeweis before terminating any employee.  Defendants provide voluminous admissible evidence to support each of these points.  Defendants' Motion at 7-12.  Even without considering Zarwasch's misappropriation of SKF Economos's confidential information, this conduct is more than sufficient to support the reasonable conclusion that Zarwasch committed defaults in duty whose natural tendency was to injure SKF Economos.

Zarwasch disputes the investigations' facts and conclusions, asserts that the investigations omitted data from their reports that would have supported Zarwasch's position, and that Cole violated his fiduciary duty by reporting to SKF USA.  Zarwasch provides no evidence to support any of these allegations.  Thus, Zarwasch provides no legal or factual basis for finding that SKF Economos's termination of Zarwasch for cause breached the Agreement.

Zarwasch does not demonstrate that the parties modified the Agreement, cannot enforce the contract against SKF Economos because of his own prior breach, and provides no legal or factual basis for finding that his termination for cause was improper.  For these reasons, Zarwasch's claim that SKF Economos breached the Agreement by terminating him is without merit.  The court, therefore, grants summary judgment on this claim as to SKF USA.

B.    *Promissory Estoppel*

In the absence of an express agreement to the contrary, Ohio assumes that all employment is at will, terminable by either party.  *Henkel v. Educational Research Council*, 45 Ohio St. 2d 249, 255, 344 N.E.2d 118, 121-122 (1976).  There are two exceptions to this general rule.  First, the facts or circumstances of an employment relationship may give rise

20

to an implied contract that limits an employer's ability to terminate an employee at will. *Mers v. Dispatch Printing Co.*, 19 Ohio St. 3d 100, 100, 483 N.E.2d 150, 150 (1985) (paragraph two of the syllabus).   Second, an employee may assert promissory estoppel to prevent an employer from claiming that the employment relationship was terminable at will.  *Id.* (paragraph three of the syllabus);  *Kelly v. Georgia-Pacific Corp.* (1989), 46 Ohio St. 3d 134, 134, 545 N.E.2d 1244, 1244 (1989) (paragraphs two and three of the syllabus).

Zarwasch raises promissory estoppel to block SKF USA's assertion that his employment was at will.  An employee asserting promissory estoppel must demonstrate (1) some representation by the employer that may reasonably be interpreted as limiting the employer's ability to terminate the employee at will, (2) the employee's detrimental reliance upon that representation when (3) that reliance was reasonable under the circumstances. *Mers*, 19 Ohio St. 3d at 100, 483 N.E.2d at 150 (paragraph three of the syllabus); *Gargasz v. Nordson Corp.*, 68 Ohio App. 3d 149, 153, 587 N.E.2d 475, 477 (1991).  In asserting promissory estoppel, an employee cannot rely on "nebulous representations" by the employer, but must point to "specific promises."  *Penwell*, 84 Ohio App. 3d at 19, 616 N.E.2d at 256.  Without such specific promises, the employee cannot demonstrate that he was justified in detrimentally relying on the employer's representations.  *Id.*; *see also Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St. 3d 131, 135-36, 543 N.E.2d 1212, 1217 (1989).

In the present case, Zarwasch offers a single piece of evidence in support of his contention that SKF Economos promised that he would be retained for a period of five years rather than serve as president of SKF Economos terminable at will.  That evidence is the Oct. 22 email from Heidegger to Nelson described earlier, in which Heidegger refers

21

to "the pre-mature ending of the 5-years-commitment" and that "Helmut's contract so to say ends 2.5 years pre maturity." The email at 1-2. As already noted, the email is not admissible evidence, as the email is not authenticated. Zarwasch fails to offer admissible evidence, therefore, to demonstrate that SKF Economos promised him a five-year term contract.

Defendants also argue that even if Zarwasch were promised a five-year term of employment and that promise were supported by consideration, that would not suffice to estopp SKF Economos from terminating him because Zarwasch was terminated for cause. Promissory estoppel only prevents an employer from claiming that the employment relationship was terminable at will. As has already been noted, a promise of a term contract does not, by itself, prevent termination for cause. To avoid termination for cause, "an employee must point to specific representations by the employer indicating that termination would not be based upon performance." *Penwell*, 84 Ohio App. 3d at, 20, 616 N.E.2d at 257.

Zarwasch states that SKF Economos never represented that he would not be terminated for cause. As had already been shown, defendants offer admissible evidence that SKF Economos had just cause to terminate Zarwasch, and Zarwasch offers no evidence to the contrary.

Zarwasch offers no admissible evidence that he was promised a term contract, and, even if he had been, promissory estoppel would not prevent his termination for cause. For these reasons, Zarwasch's contention that SKF Economos was estoped from terminating him is without merit. The court, therefore grants defendants' motion for summary judgment on this claim as to SKF USA.

22

C.      Tortious interference

Zarwasch contends that SKF USA is liable to him because it tortiously interfered with his Agreement with SKF Economos and tortiously interfered with his business relationship with SKF Economos.  Defendants deny any tortious interference with the Agreement or with Zarwasch's relationship with SKF Economos.

The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, and (4) resulting damages.  *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 171-72, 707 N.E.2d 853, 855 (1999) (paragraph one of the syllabus, affirming *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 650 N.E.2d 863 (1995)).  Tortious interference with business relations occurs when an entity, without the privilege to do so, purposefully causes a third person not to enter into or continue a business relationship with another entity.  *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* , 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995).  The elements of tortious interference with business relations are "(1) a business relationship, (2) the tortfeasor's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and, (4) damages resulting therefrom."  *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App. 3d 596, 604, 774 N.E.2d 775, 780 (2002) (footnote omitted).  Tortious interference with contract and tortious interference with business relations differ primarily in that tortious interference with business relations includes intentional interference with a prospective contractual relationship not yet reduced to contract.  *Id.*, 148 Ohio App. 3d at 604, 774 N.E.2d at 780-81.

23

Generally, "[t]ortious interference with contractual or business relations does not require a showing of malice . . . ." *Dryden v. Cincinnati Bell Tel. Co.*, 135 Ohio App. 3d 394, 400, 734 N.E.2d 409, 413 (1999).  However, when two entities are in a business relationship with one another, they are considered to have a qualified privilege to affect one another's affairs.  *Chandler & Assoc., Inc. v. America's Healthcare Alliance, Inc.*, 125 Ohio App.3d 572, 583, 709 N.E.2d 190, 197 (1997).  In that case, a third party claiming that one of the pair interfered with the third party's relations with the other member of the pair must demonstrate "actual malice."  *Id.*  In this context, actual malice refers not to ill-will or spite but to unjustified or improper interference.  A court determining whether a party has acted improperly in intentionally interfering with a contract or prospective contract of another should consider the following factors:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Fred Siegel*, 85 Ohio St. 3d 171, 172, 707 N.E.2d 853, 855-56 (adopting RESTATEMENT OF THE LAW 2D, TORTS, § 767 (1979)).

In the present case, defendants do not deny that the Agreement was an enforceable contract or that SKF USA knew of the Agreement.  Thus, the tort of interference with contract is applicable to this case, and interference with business relations is merely redundant.

As the plaintiff resisting a motion for summary judgment, Zarwasch must make "a showing sufficient to establish the existence of [any] element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex* , 477 U.S. at 323.

24

Because defendants do not deny the existence of a contract between Zarwasch and SKF Economos or that SKF USA knew of this Agreement, Zarwasch need not offer evidence in support of these points.  He must, however, offer admissible evidence sufficient to allow a reasonable jury to find that SKF USA intentionally procured a breach of the contract and that damages resulted from the breach.  Moreover, SKF Economos and SKF USA were in a business relationship with one another.  *See* Corley Decl. at 1-2 (declaring that AB SKF's policy required SKF USA to consult with all companies affiliated with AB SKF to ensure that those companies complied with United States laws and AB SKF's policies, even if the AB SKF affiliate was not part of SKF USA).  Thus, Zarwasch must also offer sufficient evidence to allow a reasonable jury to find that SKF USA's procurement of the breach was improper.

Zarwasch offers no evidence, admissible or otherwise, to support any of these matters.  Instead, Zarwasch merely alleges that individuals in SKF USA's human resources department directed or encouraged his termination and alleges that he had to buy a house and a new car and incur other financial disadvantages as a result of his agreeing to remain in the United States for five additional years.  Zarwasch also denies that Economos and SKF USA were in a business relationship with one another because SKF AB kept the Economos group and the SKF companies separate and because the requested assistance of SKF USA to Economos did not go beyond a "good faith investigation" of Zarwasch.  Zarwasch offers no evidence to support these points.  Moreover, he does not address Corley's declaration that AB SKF's policy that SKF USA was to consult with all affiliated companies to ensure that they complied with United States law and AB SKF policy.  Zarwasch also does not address Schneewiess's declaration that, at the direction of Schneeweis's immediate superior, Reed, he told Zarwasch on a number of occasions to

work with Lewandowski at SKF USA human resources in all human resources matters "to ensure compliance with United States Law and AB SKF policies." Schneeweis Decl. at 2-3. In the absence of countervailing evidence, then, this court must conclude that SKF USA and Economos were in a business relationship with one another.  Thus, Zarwasch must also provide admissible evidence that any interference with Zarwasch's employment by SKF USA was improper.  Zarwasch offers no such evidence.

Zarwasch does not offer admissible evidence sufficient to allow a reasonable jury to find that SKF USA intentionally procured a breach of the contract, that damages resulted from the breach, or that SKF USA's procurement of the breach was improper.  For this reason, Zarwasch fails to make a showing sufficient to establish the existence of every element essential to his case and on which he will bear the burden of proof at trial. Consequently, he is unable to resist defendants' motion for summary judgment with respect to his claims for tortious interference with contract or tortious interference with business relations.  The court, therefore grants defendants' motion for summary judgment on these claims.

V.

For the reasons given above, the court **GRANTS** defendants' motion for summary judgment in its entirely.

**IT IS SO ORDERED.**

Date:  January 12, 2011                          s/ *Nancy A. Vecchiarelli*
                                                 Nancy A. Vecchiarelli
                                                 United States Magistrate Judge